UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MACARTHUR DENSON,
    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 21-10167-MPK

CAROL A. MICI,
    Defendant.

MEMORANDUM AND ORDERS
ON PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (#15)
AND DEFENDANT'S MOTION TO DISMISS (#18).

KELLEY, U.S.M.J.

I. Introduction.

MacArthur Denson, an inmate at the Souza Baranowski Correctional Center (SBCC), has filed suit against Carol A. Mici, the Commissioner of the Massachusetts Department of Correction (DOC). Denson alleges that he is a devoutly practicing Muslim and that Mici's failure to provide him with pure, chemical free prayer oils violates the Religious Land Use and Institutionalized Persons Act (RLUIPA), *see* 42 U.S.C. § 2000cc, *et seq*. (#1.)

Denson has moved for appointment of counsel. (#15.) Mici has moved to dismiss. (#18.) On October 12, 2021, the court heard argument and took the motions under advisement. The court offered the parties the opportunity to submit further briefing by October 29, 2021. Denson filed a timely supplemental opposition. (#39.) In response to Denson's supplemental opposition but

1

weeks after the October 29 deadline, Mici filed a "Notification" (#40), to which Denson has responded. (#41.)

The motions are ready for disposition. For the reasons set out below, the court denies Denson's motion for appointment of counsel without prejudice. The court denies Mici's motion to dismiss.[1]

## II. Plaintiff's Motion for Appointment of Counsel (#15).

There is no constitutional right to appointed counsel in a civil case. *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986) (per curiam); *see DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). Denson has been granted leave to proceed *in forma pauperis* (#8) and may seek appointed counsel under 28 U.S.C. § 1915(e)(1). To qualify, he must show "exceptional circumstances." *Cookish*, 787 F.2d at 2; *see Minggia v. Worcester Cty. House of Corr.*, No. 11-cv-40002-FDS, 2012 WL 928711, at *1 (D. Mass. Mar. 12, 2012) ("exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on [plaintiff's] due process rights" (citation omitted)).

On a motion for appointment of counsel, the court weighs the totality of the circumstances. *DesRosiers*, 949 F.2d at 24. Relevant circumstances include the complexity of the factual and legal issues involved and plaintiff's ability to bring the case himself. *Cookish*, 787 F.2d at 2-3. The court may also weigh plaintiff's prior experience representing himself and the likelihood of success on the merits. *Minggia*, 2012 WL 928711, at *1.

---

[1] Mici filed a form indicating consent to proceed before a magistrate judge under 28 U.S.C. § 636(c). (#23.) Denson's forms were unclear. However, he submitted a letter to the court stating that it is his intent to consent to proceed before a magistrate judge. (#21; #22; #22-1.) At the October 12 hearing, Denson confirmed that he consents to proceed before a magistrate judge. Oct. 12 Tr. (#43) at 4.

Denson argues that this case will set precedent because the issue of whether a prisoner must be given access to chemical-free prayer oils is undecided. He also asserts that, while he has some experience representing himself, he is unable to properly do so here. (#15 at 1-2.)

Based on the totality of the circumstances, the court finds that Denson has not shown "exceptional circumstances." Denson appears able to adequately represent himself. He has filed appropriate motions. (#2; #3; #15; #24; #29.) He has communicated with the court and filed appropriate responses to its orders. (#5; #6; #7; #37.) His briefing in opposition to dismissal is cogent and supported by legal citations. (#34; #39; #41.) At the October 12 hearing, he ably articulated his claims.

A search of the court's records shows that Denson previously has brought two cases related to religious exercise, in 1998 and 2014. *Denson v. Marshall et al.*, No. 98-cv-11156-WGY; *Denson v. Gelb*, No. 14-cv-14317-DPW. He was never appointed counsel in the 1998 case. *See Denson*, No. 98-cv-11156-WGY, ECF Nos. 3, 4, 15, Docket; *see also Denson v. Marshall*, 59 F. Supp. 2d. 156, 156-157 (D. Mass. 1999), *aff'd*, *Denson v. Marshall*, 230 F.3d 1347 (1st Cir. 2000) (per curiam) (unpublished). Eventually, he was appointed counsel in the 2014 case, given the novelty and potential merit of his claim. *See Denson*, No. 14-cv-14317-DPW, ECF Nos. 4, 9, 32-33; *see also Denson v. Gelb*, No. 14-cv-14317-DPW, 2015 WL 4271481, at *3-4 (D. Mass. July 13, 2015).[2]

It is too soon to tell whether Denson's claim in this case has merit. However, responding to his argument that this is a case of first impression, the court notes that RLUIPA (and First Amendment) claims regarding access to prayer oils have been adjudicated by federal district

---

[2] In the 2014 case, which involved RLUIPA, Denson had some success. Judge Woodlock entered declaratory judgment. *See Denson*, No. 14-cv-14317-DPW, ECF Nos. 70 at 38; 71.

courts. *See*, *e.g.*, *Sargent v. Long*, No. 17-cv-12 NAB, 2020 WL 7240443, at *7-8 (E.D. Mo. Dec. 9, 2020); *Davis v. Powell*, No. 10-cv-1891-JLS(RBB), 2011 WL 4344251, at *11-12 (S.D. Cal. Aug. 9, 2011); *Thomas v. Little*, No. 09-cv-1117-BRD/egb, 2009 WL 1938973, at *5 (W.D. Tenn. July 6, 2009); *Charles v. Verhagen*, 220 F. Supp. 2d 937, 948 (W.D. Wis. 2002). The United States District Court for the District of Connecticut adjudicated the specific claim that available prayer oils "contain[ed] chemicals that are prohibited by Islam" under RLUIPA (and the First Amendment). *Vega v. Lantz*, No. 04-cv-1215-DFM, 2009 WL 3157586, at *12 (D. Conn. Sept. 25, 2009); *see Vega v. Lantz*, No. 04-cv-1215-DFM, 2012 WL 5831202, at *4 (D. Conn. Nov. 16, 2012); *Vega v. Lantz*, No. 04-cv-1215-DFM, 2013 WL 6191855, at *6, *7 (D. Conn. Nov. 26, 2013); *cf. Cryer v. Clarke*, No. 09-cv-10238-PBS, 2012 WL 6800791, at *11 (D. Mass. Sept. 7, 2012) (involving "pure" tobacco for pipe ceremonies, as opposed to kinnick-kinnick with tobacco), *report and recommendation adopted*, No. 09-cv-10238-PBS, ECF No. 211 (Jan. 3, 2013); *Farrow v. Stanley*, No. 02-cv-567-PB, 2005 WL 2671541, at *5 (D.N.H. Oct. 20, 2005) (similar).

At this early stage, the legal and factual issues do not appear complicated. Furthermore, Denson appears capable of representing himself. Denial of his motion for appointment of counsel is without prejudice; he may renew his motion if exceptional circumstances arise.

II. Defendant's Motion to Dismiss (#18).

A. Legal Standard.

1. Fed. R. Civ. P. 12(b)(6).

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is inappropriate if the complaint satisfies Fed. R. Civ. P. 8(a)(2)'s requirement of "a short and plain statement of the claim showing that [plaintiff] is entitled to relief," Fed. R. Civ. P. 8(a)(2); *see Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl.*

4

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are unnecessary; Rule 8(a)(2) only requires sufficient detail to provide defendant with fair notice of plaintiff's claim and the bases for it. *Twombly*, 540 U.S. at 555.

Yet a complaint only shows that plaintiff is entitled to relief if the factual allegations raise that right above a speculative level. *Twombly*, 540 U.S. at 555. To survive a Rule 12(b)(6) motion, a complaint must allege enough facts to state a claim that is "plausible on its face." *Id*. at 570. *See Iqbal*, 556 U.S. at 678. A complaint has facial plausibility when it alleges enough facts to allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556. This is not a probability requirement but demands more than a "sheer possibility" that defendant acted unlawfully. *Id.*; *see Twombly*, 550 U.S. at 556.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must separate the factual allegations in the complaint from the legal conclusions. Factual allegations are entitled to a presumption of truth; legal conclusions are not. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a facially plausible claim is a "context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id*. at 679; *see Ocasio-Hernández*, 640 F.3d at 12-13.

Under Rule 12(b)(6), the general rule is that the court may not consider documents outside the complaint that are not expressly incorporated by reference into the complaint, unless the court converts the motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co*., 267 F.3d 30, 33 (1st Cir. 2001); *see Trans-Spec Truck Service, Inc. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008); *Beddall v. State St. Bank & Trust Co*., 137 F.3d 12, 16-17 (1st Cir. 1998); *Fudge v. Penthouse Intern., Ltd*., 840 F.2d 1012, 1015 (1st Cir. 1988). There exists a narrow exception to the general rule for, among

other things, documents sufficiently referred to in the complaint and documents that are central to plaintiff's claim. *Id.*; *see Trans-Spec*, 524 F.3d at 321; *Beddall*, 137 F.3d at 16-17; *Fudge*, 840 F.2d at 1015. If the complaint sufficiently refers to a document and its authenticity is not challenged, the document effectively "merges" into the complaint. *Id*. (quoting *Beddall*, 137 F.3d at 17).

## 2. RLUIPA.

RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

On the first two elements of a RLUIPA claim—(1) an institutionalized person's religious exercise has been burdened and (2) the burden is substantial—plaintiff bears the burden of proof. *Spratt v. Rhode Island Dept. of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007).[3] On the second two elements

---

[3] The first element breaks down into several sub-elements. However, Mici does not argue that Denson is not a person confined to an "institution." *See* 42 U.S.C. § 1997(1)(A)-(B) (defining term to include state-owned or operated correctional facility). Nor does she argue that the use of oil in prayer is not a "religious exercise." *See* 42 U.S.C. § 2000cc-5(7)(A) (defining phrase broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief"); *see also Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (exercise of religion "often involves not only belief and profession but the performance of…physical acts such as assembling with others for a worship service or participating in sacramental use of bread and wine." (citation and punctuation omitted)).

For the purposes of her motion to dismiss, Mici expressly does not dispute that Denson's request for chemical-free prayer oil is motivated by a sincerely held religious belief. Oct. 12 Tr. at 7. *See generally Holt v. Hobbs*, 574 U.S. 352, 361-362 (2015).

of a RLUIPA claim—(3) the burden furthers a compelling governmental interest and (4) the burden is the least restrictive means of achieving that interest—the government bears the burden of proof. *Id.*; *see Holt*, 574 U.S. at 357-358. RLUIPA provides "expansive protection" for religious liberty and the least-restrictive-means test is "exceptionally demanding." *Holt*, 574 U.S. at 358, 364 (citation omitted). RLUIPA's expansive protection for religious liberty is greater than that afforded by the First Amendment. *See id.* at 356-357; *see also Kuperman v. Wrenn*, 645 F.3d 69, 79 (1st Cir. 2011).

RLUIPA does not define "substantial burden," *see* 42 U.S.C. § 2000cc-5; however, the Supreme Court has provided some guidance.[4] The relevant inquiry is whether the government imposed a substantial burden on his religious exercise, not whether plaintiff is able to engage in other forms of religious exercise. *Holt*, 574 U.S. at 361-362. RLUIPA applies whether the exercise is compelled by the religion or not. *Id.* at 362; *see* 42 U.S.C. § 2000cc-5(7)(A). It is not limited to beliefs that are shared by all members of the religion. *Id.*

The *Holt* Court observed in dicta that plaintiff had "easily" met his burden of proving that the Arkansas Department of Correction's grooming policy substantially burdened his religious exercise (i.e., growing a ½ inch beard):

> The Department's grooming policy requires petitioner to shave his beard and thus to "engage in conduct that seriously violates [his] religious beliefs." … If petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise. Indeed, the Department does not argue otherwise.

574 U.S. at 361 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014) (under Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.*)).

---

[4] More guidance from the Supreme Court may be forthcoming in *Ramirez v. Collier,* No. 21-5592 (oral argument held on November 9, 2021).

The First Circuit has not expressly defined "substantial burden" under RLUIPA but has assumed, without deciding, that it involves "putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1982) (under First Amendment); *see Spratt*, 482 F.3d at 38 (assuming *arguendo* that *Thomas* applied under RLUIPA); *LeBaron v. Spencer*, 527 Fed. Appx. 25, 29 (1st Cir. 2013) (per curiam) (unpublished) (discussing *Spratt* and applying same standard in absence of objection from parties); *see also Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (applying *Thomas* under RLUIPA). *See generally McGee v. O'Brien*, 160 F. Supp. 3d 407, 415 (D. Mass. 2016).

B. <u>Facts</u>.

1. <u>The complaint</u>.

Denson alleges that he is a state prisoner in custody at SBCC and that Mici is the Commissioner of the DOC. She is sued in her official capacity. (#1 ¶¶ 1-2.) In paragraphs 3 through 7, he alleges:

> 3. Plaintiff is a devoutly practicing Muslim.
>
> 4. Sometime in 2018 Plaintiff submitted a request to have access to pure, chemical free, prayer oil as was used by the Prophet Muhammad (Peace And Blessings Be Upon Him).
>
> 5. In 2019 Plaintiff's request was denied on the grounds that the oils sold were compliant with his faith and that the manufacturer of the prayer oils uses the highest production standards.
>
> 6. In 2019 Plaintiff filed an appeal arguing that the oils were not c[o]mpliant with his religious beliefs and the fact that the manufacturer uses the highest production standards does not mean that the oils were compliant with his faith.
>
> 7. The appeal was subsequently denied.

*Id*. ¶¶ 3-7.

Count One raises the RLUIPA claim. Denson restates paragraphs 3 through 7, *id*. ¶ 9, and alleges:

> Defendant knew, or should have known, that not providing Plaintiff with access to pure, chemical free, prayer oils violated the Religious Land Use And Institutionalized Persons Act.

*Id*. ¶ 10.

Count Two restates paragraphs 3 through 7. *Id*. ¶ 11. Denson alleges:

> Defendant[']s failure to provide Plaintiff with pure, chemical free, prayer oils violates Plaintiff's religious rights under the Federal Constitution and the Massachusetts Constitution and Declaration of rights and Plaintiff is entitled to Declaratory Judgment.

*Id*. ¶ 13.

Denson requests injunctive relief; declaratory judgment; relief under Mass. Gen. Laws. ch. 231, § 5; and an award of costs. *Id*. at 3. He alleges that administrative remedies were exhausted. *Id*. ¶ 8.

Denson is not pressing Count Two (#34 at 1; Oct. 12 Tr. at 6-7) and thus, only Count One—the RLUIPA claim—is at issue.

## 2. The outside materials.

Along with her motion to dismiss, (then represented by predecessor defense counsel), Mici filed a memorandum of law (#19) with three documents that a program coordinator certified under pains and penalty of perjury constituted "a true, accurate, and complete copy of" the administrative record "for Religious Service Review Request dated 4/18/18" by Denson and the subsequent Religious Service Review Committee (RSRC) decisions on that request. (#19-1 at 2.) The documents were the RSRC memorandum from the October 11, 2018 review of religious service requests by numerous prisoners, *id*. at 3-19; from the January 15, 2019 review, *id*. at 20-26; and from the March 19, 2019 review, *id*. at 27-30. Among other omissions, this initial administrative

9

record did not include the "Religious Service Review Request dated 4/18/18." Moreover, the RSRC's memoranda from the October 11, 2018 and March 19, 2019 reviews do not appear to have any connection to Denson's request for chemical-free prayer oils, as opposed to his request for a larger Kufi. *Id*. at 19, 29.

In his initial opposition, Denson noted that the administrative record did not include his appeal from the RSRC's denial of his request for chemical-free prayer oils, which Mici denied. (#34 at 2 n.1.) Denson attached, *inter alia*, an "Inmate Religious Services Request Appeal Form" dated April 2, 2019 related to the RSRC's January 15, 2019 review. (#34-1.) That form set forth the bases for Denson's appeal. *Id*. at 2-3. Denson wrote:

> … I submitted supporting religious material supporting my sincerely held belief that I cannot use harmful or doubtful products, especially for religious practices such as…prayers.… As stated in my initial request the oils currently sold by Keefe contain fragrances. Fragrance is a general term that can stand for thousands of different ingredients, many of which are harmful and not compliant with use in my faith…. I submitted a similar request in 2017, however, there was some misunderstanding of what materials I was complaining about…. Failure to accommodate my request for access to prayer oils that are compliant with my faith is a violation of my constitutional ri[g]hts and a violation of the Religious Lan[d][U]se And Institutionalized Persons Act.

*Id*.

Denson also attached a letter from the Superintendent of SBCC dated May 2, 2019. (#34-2.) The letter explained that Mici upheld the RSRC's denial of his request for chemical-free prayer oils and set out the RSRC's rationale. *Id*. at 2.

Shortly before the October 12 hearing before this court, successor defense counsel filed a corrected administrative record (#35) which consisted of several new documents.[5] Two of those

---

[5] The new documents include a new certification (#35-1) and: a "Religious Services Request Form" dated April 18, 2018 related to Denson's request to buy prayer oils from Halalco on which the SBCC's Superintendent's recommendation is recorded, *see* #35-2 at 1; an "Inmate Religious Services Request Form" dated April 23, 2018 related to Denson's request to buy prayer oils from

documents are of note here. In the "Religious Services Request Form" dated April 18, 2018, Denson states:

> I am requesting that I be allowed to purchase my prayer oils from [Halalco]. The grounds for my request are, it has been established that the current oils that are sold and have previously been sold by access are made from chemicals that are harmful to one['s] health, as a [M]uslim I am required to stay away from harmful and doubtful things[.] Consequently, I cannot use those oils for prayer purposes. Prayer is one of the most sacred practices in Islam and to use those oils for prayer would put me in a position of sinning in prayer. Until such time that access starts selling oils that comply with the requirement of my faith (they extend beyond being alcohol free) I am asking that I be allowed to purchase them from a place that sells oils free of those chemicals.

(#35-2 at 1.) In the "Inmate Religious Services Request Form" dated November 6, 2018, he states:

> I am commanded to follow the example of the Holy Prophet (PBUH)…. The Holy Prophet, (PBUH), never used chemical based oils. Keefe only provides chemical based oils which are in question as far as being suitable for Islamic use. I am commanded to shun doubtful matters…. The oils sold by Keefe are doubtful in that they contain fragrances. Fragrance is a general term used for chemicals that are used in products but are not listed. Many of those chemicals are harmful. I am prohibited from using harmful products….

(#35-4 at 3); *see also* #35-6 at 9.

---

Halalco, *see id*. at 5-6, with apparent attachments, *see id*. at 7-14; the RSRC's memorandum from the May 22, 2018 review, *see* #35-3 at 1-5; a "Religious Service Request Form" dated November 13, 2018 related to Denson's request for chemical-free prayer oils on which the SBCC Superintendent's recommendation is recorded, *see* #35-4 at 1; an "Inmate Religious Services Request Form" dated November 6, 2018 related to Denson's request for chemical-free prayer oils, *see id*. at 2-3; a duplicate of the RSRC's memorandum from the January 15, 2019 review, *see* #35-5 at 1-7; and a memorandum from the Director of Program Services Division to the SBCC Superintendent dated May 1, 2019 indicating that Mici upheld the RSRC's decision related to Denson's request for chemical-free prayer oils and instructing him to inform Denson of that decision, *see* #35-6 at 1, with apparent enclosures, i.e., a memorandum from the Director of Program Services Division to Mici dated April 24, 2019 describing the RSRC's decision and the bases of Denson's appeal, *see id*. at 2-3; a version of the "Inmate Religious Services Appeal Form" dated April 2, 2019 related to the RSRC's January 15, 2019 review on which Mici's denial is recorded, *see id*. at 4-5, with an apparent attachment, *see id*. at 6; a duplicate of the "Religious Services Request Form" dated November 13, 2018 on which the SBCC's Superintendent's recommendation is recorded, *see id*. at 7; and a duplicate of the "Religious Services Request Form" dated November 6, 2018 related to Denson's request for chemical-free prayer oil, *see id*. at 8-9.

C. <u>Discussion</u>.

1. <u>The court will consider only some of the outside materials.</u>[6]

The parties dispute whether the court can properly consider the outside materials submitted. In her "Notification," Mici seems to invite the court to consider the entirety of the corrected administrative record, i.e., #35-2 through #35-6. She argues that her submission of those documents does not convert her Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment because they are "centrally referenced" in the complaint and thus "merged" with it. She asserts that the complaint refers to the fact that Denson submitted two requests related to prayer oils. (#40 at 1.) It certainly appears that Denson submitted two requests related to prayer oils, in April 2018 and November 2018. *See*, *e.g.*, #35-2 at 1; #35-4 at 2-3. But the complaint refers to the fact that he submitted one, not two. *See* #1 ¶ 4 ("Sometime in 2018 Plaintiff submitted *a request*…" (emphasis added)); ¶ 5 ("In 2019 Plaintiff's *request* was denied… (emphasis added)); ¶ 6 ("In 2019 Plaintiff filed *an appeal*…" (emphasis added)); ¶ 7 ("*The appeal* was subsequently denied." (emphasis added)).

Moreover, Denson's reference to the fact that he submitted a request and then filed an appeal is not the same as a reference to *the document* that set out his request and appeal. On this ground, the cases cited by Mici are distinguishable. (#40 at 1 ("The complaint discusses *the Agreement* at considerable length" (emphasis added) (citing *Beddall*, 137 F.3d at 16)); *Fudge*, 840 F.2d at 1015 ("But here *the article* was not merely referred to in plaintiffs' complaint but was

---

[6] Denson's factual assertions in his briefing that are not derived from his complaint or the outside materials that will be considered by the court as discussed below are disregarded. *E.g.*, #34 at 4-5; #39 at 4-5. This includes the various articles on chemicals that he attached to his initial opposition. (#34-3; #34-4; #34-5.)

absolutely central to it. Plaintiffs unquestionably would have had to offer a copy of *that article* in order to prove their case" (emphasis added)).

Mici appears to argue that the whole corrected administrative record is central to Denson's RLUIPA claim. (#40 at 1.) This would arguably be true if the court were tasked with deciding whether Denson exhausted his administrative remedies. But Mici does not argue that Denson did not exhaust his administrative remedies.[7] The issue is whether Denson has plausibly stated a claim for relief under RLUIPA. While Mici might want to introduce evidence of the RSRC's rationale for denying Denson's request for access to chemical-free prayer oils, that does not make its memoranda central to his RLUIPA claim.[8] *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (limiting consideration of outside materials to full text of advertisement, which was only outside material "integral" to determining adequacy of complaint raising claim of false advertising). The court thus declines Mici's invitation to consider the whole corrected administrative record.

Denson, on the other hand, objects to the court's consideration of any part of the corrected administrative record except for Mici's decision on his appeal from the RSRC's denial of his November 2018 request. He argues that he is not seeking judicial review of the April 2018 proceedings. (#41 at 2.) The court sustains Denson's objection in part but overrules it as follows.

---

[7] Successor counsel seemed to suggest at the October 12 hearing that Denson did not exhaust his administrative remedies as to any request for unscented prayer oils. Oct. 12 Tr. at 27. But that was the reason for the November 2018 proceedings. Denson argued that the term "fragrance" denotes chemicals that are harmful or doubtful and that the prayer oils sold through Keefe contain fragrances. (#35-4 at 2-3.)

[8] What's more, the corrected administrative record includes forms related to Denson's request for a larger Kufi, not chemical-free prayer oils. *See* #35-2 at 2-4.

In deciding this Rule 12(b)(6) motion, the court will consider the outside materials pertaining to Mici's decision on Denson's appeal from the RSRC's denial of his November 2018 request that Denson himself attached to his initial opposition, i.e., the "Inmate Religious Services Request Appeal Form" dated April 2, 2019 (#34-1 at 2-3)[9] and the letter from SBCC's Superintendent dated May 2, 2019 (#34-2 at 2). *Cf. Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (considering public documents that plaintiffs themselves attached to opposition).

The court will also consider the "Religious Services Request Form" dated April 18, 2018 (#35-2 at 1) and the "Inmate Religious Services Request Form" dated November 6, 2018 (#35-4 at 2-3). These forms appear to have been prepared by Denson himself. *Id*. Moreover, Denson's RLUIPA claim undeniably relates to the November 2018 proceedings, and the "Inmate Religious Services Request Appeal Form" dated April 2, 2019, explicitly refers to a similar, earlier request. (#34-1 at 3.)[10]

> The problem that arises when a court reviews materials outside the complaint
>
> generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in [the defendant's] papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Denson had actual notice of all of the information in the "Religious Services Request Form" dated April 18, 2018, and the

---

[9] The version of this form reflecting the SBCC Superintendent's recommendation and Mici's decision appears in the corrected administrative record at #35-6 at 4-5.

[10] Although this form refers to a similar request "in 2017," *id*. this seems to be a typographical error.

14

"Inmate Religious Services Request Form" dated November 6, 2018 and was certainly aware that the court might consider them. Therefore, the "necessity of translating [Mici's] Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.*[11]

### 2. Denson has stated a plausible claim for relief.

Given this threshold ruling, the court has no trouble concluding that Denson has stated a plausible claim for relief under RLUIPA. The complaint squarely alleges that Denson was denied access to chemical-free prayer oils and that Mici knew, or should have known, that doing so violated RLUIPA. (#1 ¶¶ 3-7, 10.) From the "Religious Services Request Form" dated April 18, 2018, and the "Inmate Religious Services Request Form" dated November 6, 2018, the court draws the reasonable inference that Mici imposed a substantial burden on Denson's religious exercise. The latter explains that the prayer oils sold through Keefe contain fragrances and that "fragrance" is a general term for chemicals, which can be harmful. It explains that, as a Muslim, Denson is prohibited from using harmful or even "doubtful" products. He further states that he is obligated to follow the example of the Holy Prophet, who did not use chemical-based prayer oils. (#35-4 at 3.) The former could hardly allege a substantial burden more clearly:

> …I cannot use those oils for prayer purposes. Prayer is one of the most sacred practices in Islam and to use those oils for prayer would put me in a position of sinning in prayer….

(#35-2 at 1.)[12]

---

[11] Mici has waived an objection to the court's consideration of the documents identified above. She submitted the April 18, 2018 and November 6, 2018 forms (#35-2 at 1; #35-4 at 2-3) and a version of the April 2, 2019 form (#35-6 at 4-5) herself. Moreover, she has made no attempt to argue that the court can consider some parts of the corrected administrative record but not others.

[12] Even if the court were to find that Denson has not stated a plausible claim for relief, it would be inclined to grant him leave to amend under Fed. R. Civ. P. 15(a)(2).

Mici argues that Denson does not, and could not, allege a substantial burden. In particular, she argues that the RSRC confirmed that the prayer oils sold through Keefe are compliant with Islam and because Denson has access to faith-compliant prayer oils from an approved supplier, denial of access to prayer oils from an unapproved supplier "simply cannot amount to a substantial burden…." (#19 at 8-9 (citing #19-1 at 21) (memorandum of January 15, 2019 review)). Mici's argument, however, is directed toward whether Denson is entitled to relief, not whether Denson has plausibly stated a claim for relief.

Mici must prove that the burden on Denson's religious exercise is the least restrictive means of furthering a compelling governmental interest. *See Spratt*, 482 F.3d at 38; *see also* 42 U.S.C. § 2000cc-1(a). While prison security is a compelling interest, *see Spratt*, 482 F.3d at 39, Mici's argument in this regard is more appropriately made on a developed factual record. Predecessor counsel's lone legal citation proves the point. Counsel quoted at length from the Massachusetts Supreme Judicial Court's recitation of evidence adduced at the summary judgment stage in *Rasheed v. Comm'r of Corr.*, 446 Mass. 463, 470-471 (2009). (#19 at 9); *see Sparks v. Dennehy*, No. 08-cv-11437-PBS, 2009 WL 6490086, at *5 (D. Mass. Oct. 12, 2009) (on Rule 12(b)(6) motion, lack of adequate factual record to permit assessment of DOC's actions), *report and recommendation adopted*, No. 08-cv-11437-PBS, 2009 WL 6490086, at *1 (D. Mass. Nov. 16, 2009).[13]

---

[13] Even if the court were to consider the whole corrected administrative record, it would lack an adequate factual record to permit assessment of DOC's actions. As set out in the relevant memoranda, the RSRC did not cite a prison security interest in denying Denson's request to buy prayer oils from Halalco in April 2018 or his request for chemical-free prayer oils in November 2018. It asserted that the available prayer oils had been declared faith-compliant by the DOC chaplains and Keefe. (#35-3 at 2; #35-5 at 2.)

16

III. Conclusion.

For the reasons set out above, Denson's motion for appointment of counsel (#15) is denied without prejudice to renewal. Mici's motion to dismiss (#18) is denied.

January 20, 2022

/s/ M. PAGE KELLEY
M. Page Kelley
Chief United States Magistrate Judge

III. Conclusion.

For the reasons set out above, Denson's motion for appointment of counsel (#15) is denied without prejudice to renewal. Mici's motion to dismiss (#18) is denied.

January 20, 2022

/s/ M. PAGE KELLEY
M. Page Kelley
Chief United States Magistrate Judge